624 A.2d 648

**Wayne A. KRAMER, Appellant,**

v.

**Josephine G. CARRABINO and United Federal Savings Bank, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 6, 1993.

Filed April 28, 1993.

Russell Montgomery, Altoona, for appellant.

Rosadele Kauffman, State College, for appellee United Federal.

Before WIEAND, OLSZEWSKI and HESTER, JJ.

WIEAND, Judge.

In this appeal we are called upon to review a tripartite agreement, executed by an owner, a contractor and a lending institution, by the terms of which the lending institution agreed to hold all construction funds and make advances to the contractor as the work progressed. The trial court held that the lending institution by its agreement assumed no duty to the contractor and, in an action between contractor and

lending institution, entered summary judgment in favor of the lending institution. After careful review, we reverse.

Joseph Carrabino and Josephine, his wife, employed Wayne A. Kramer to construct a residential dwelling on a lot owned by the Carrabinos at Port Matilda, Centre County. United Federal Savings Bank agreed to make a construction loan in the amount of $147,500.00, to be secured by a mortgage and note executed by the Carrabinos. Additional moneys required for completion of the residence were to be deposited with the bank by the owners. All moneys were to be held by the bank in a "loans in process account" and were to be advanced by the Bank to Kramer as the work progressed in five installments of $27,000.00 each. The final payment was due when the residence was "completed and ready for occupancy and Declaration of Acceptance has been submitted to Lender." With respect to this final disbursement, the tripartite loan agreement provided as follows:

> "When the Contractor requests the final inspection, Lender will require that Owner and Contractor make a joint inspection of the dwelling and execute a 'Declaration of Acceptance,' as supplied by Lender, and submit this joint declaration to Lender prior to Lender making the 5th Stage Disbursement."

In reliance upon this agreement, Kramer agreed to waive his right to file a mechanics' lien.

From the "loans in process account" the bank drew moneys needed to make the first four installment payments to the contractor as the work progressed. When the residence was completed, United Federal made an inspection and authorized a final payment to Kramer. A declaration of acceptance was forwarded to the contractor who signed it and forwarded it to the Carrabinos. Apparently a dispute then arose concerning the construction of the residence between the owner and the contractor. In any event, the Carrabinos refused to sign the declaration of acceptance and instructed the bank not to release the final payment.

The bank, without making any attempt to have the owner and contractor conduct a joint inspection of the residence and

resolve their disagreement, refused to make any further payment to the contractor. Instead, the bank removed the remaining funds from the account which had been maintained for payment of the contractor and returned the funds to its general account. It also gave the owners credit for this amount against the face amount of the construction mortgage. Thereafter, the owners sold the property and satisfied the construction mortgage. As a consequence, the bank no longer has moneys in the special account with which to pay to the contractor the final installment.

Kramer filed an action against the Carrabinos and United Federal to recover the balance due under the construction agreement. Following the taking of depositions from Lawrence C. Saylor, the bank's loan officer in charge of the Carrabino transaction, United Federal filed a motion for summary judgment. When the trial court granted it, Kramer appealed.

In *Garbish v. Malvern Federal Savings and Loan Ass'n.*, 358 Pa.Super. 282, 517 A.2d 547 (1986), *allocatur denied*, 516 Pa. 641, 533 A.2d 712 (1987), the Court explored the duties of a lending institution to the owners with respect to the disbursement of a construction fund. The Court held that the lending institution had a fiduciary's duty to disburse funds carefully and with the utmost good faith. We discern no basis for imposing any lesser duty on the lending institution with respect to the contractor where, as here, he has surrendered the right to file a mechanics' lien in reliance upon the bank's agreement with the contractor to hold and disburse those funds necessary to pay him for his work according to the parties' agreement.

In determining the bank's duties, of course, we must look to the terms of the construction loan agreement. In *Henry v. First Federal Savings & Loan Association of Greene County*, 313 Pa.Super. 128, 459 A.2d 772 (1983), the Court observed:

> The interpretation of [a] construction loan agreement is a question of law for the court. While it is the court's province to interpret the agreement, it is still inappropriate to enter a summary judgment if there are substantial

disputes as to the facts regarding the interpretation or application of its terms. *Murray v. Yoe*, 170 Pa.Super. 348, 85 A.2d 623 (1952). However, if the terms of the construction loan agreement are clear and unambiguous, we believe that summary judgment is appropriate if the court is able to apply those terms to the facts of the case because of the absence of substantial factual disputes.

*Id.* 313 Pa.Super. at 134–135, 459 A.2d at 775. When interpreting a contract, a court will "imply an agreement by the parties . . . to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract." *Slater v. Pearle Vision Center, Inc.*, 376 Pa.Super. 580, 586, 546 A.2d 676, 679 (1988).

■ Pursuant to the tripartite loan agreement in the instant case, the lending institution assumed responsibility for holding the construction moneys and advancing them to the contractor as the work progressed. The parties' agreement was intended to protect both the owner and the contractor, as well as the bank's security for its loan. When the contractor advised that the work had been completed, the lending institution had a duty to require the owner and the contractor to make a joint inspection of the residence and disburse the balance of the funds as the parties agreed.

It is correct, as the bank argues, that it could not be made to pay the remaining funds to the contractor without the consent of the owners. On the other hand, the bank could not return the remaining funds to the owners or otherwise act to defeat the contractor's claim against the fund from which he was to be paid. Its duty to exercise good faith to protect the interests of the parties extended to both the owner and the contractor. When the bank took the proceeds intended to be used as final payment to the contractor, returned the proceeds to its general fund and gave the owners credit therefor against the amount the owners were required to pay, the bank breached its agreement with the contractor. It failed to exercise

that good faith in the performance of the contract which was an inherent part of its contract. It demonstrably damaged the contractor's right to receive the fruits of the contract by depriving the contractor of the final payment while, at the same time, allowing the owners to sell the property free and clear of the construction mortgage without paying the contractor in full. The bank, in effect, allowed the owners to resell the property after paying only eighty (80%) percent of the contract price and without any effort to fulfill its contractual duty to use the moneys which it held to pay the contractor for his work.

The contractor's right to expect the bank to act in good faith to preserve funds for the payment of the contractor's legitimate claims does not depend upon principles applicable to third party beneficiaries. Here, the contractor was a party to the agreement which defined the rights of owner, contractor and lending institution. See generally: Reitz, Construction Lenders' Liability To Contractors, Subcontractors, And Materialmen, 130 U.Pa.L.R. 416 et seq. (1981).[1]

Whether we deem the funds in the "loans in process account" to be trust assets or impose, upon the lending institution the duties of an agent to its principal, it seems clear that the terms of the agreement required that the bank not divert funds from the construction fund without the consent of the owners and contractor. Without that consent, a final payment could not be made to the contractor. By the same agreement, however, the lending institution could not divert the construction funds to the owners without the contractor's consent. This was the fund from which the contractor was to be paid, and the bank could not deal with the fund as its own without risking liability to the party ultimately determined to be entitled to receive the same. When it attempted to do so by

1. Because the contractor and the lending institution were parties to the agreement, we find of no precedential value those decisions refusing to imply third party beneficiary rights in contractors who were not parties to agreements between lending institutions and owners. See: *Urban Systems Development Corp. v. NCNB Mortgage Corp.*, 513 F.2d 1304 (4th Cir.1975); *Embree Construction Group, Inc. v. Rafcor, Inc.*, 330 N.C. 487, 411 S.E.2d 916 (1992).

crediting the loan account of the owner without the contractor's consent, the bank breached its agreement with the contractor. If it is ultimately determined that the contractor is entitled to some or all of the final payment, he is entitled to expect payment from the fund which the bank agreed to hold for that purpose.

Reversed and remanded for further proceedings. Jurisdiction is not retained.