Michelle MANFREDI, Appellant,

v.

DAUPHIN DEPOSIT BANK,

v.

COZEN & O'CONNOR, Louis A. Manfredi and Charlotte M. Manfredi, Appellees.

Superior Court of Pennsylvania.

Argued April 16, 1997.

Filed July 16, 1997.

John W. Thompson, Jr., York, for appellant.

Michael W. Flannelly, York, for Dauphin Deposit Bank, appellee.

Before CAVANAUGH, POPOVICH and OLSZEWSKI, JJ.

POPOVICH, Judge:

This is an appeal from an order of the Court of Common Pleas of York County granting summary judgment in favor of Dauphin Deposit Bank (Dauphin Deposit) in an

action for conversion and violation of the Uniform Fiduciaries Act (UFA).[1] After examining the Uniform Commercial Code (UCC)[2] and the UFA, the lower court determined that appellant had no right of action against Dauphin Deposit for conversion and that Dauphin Deposit had a good faith defense under the UFA. Accordingly, the lower court granted summary judgment in favor of Dauphin Deposit. We agree that appellant cannot sue Dauphin Deposit for conversion under the UCC. However, we find that Dauphin Deposit is liable under the UFA.

■■■ Our scope of review is plenary when reviewing the propriety of a lower court's entry of summary judgment. *Schriver v. Mazziotti*, 432 Pa.Super. 276, 638 A.2d 224, 225 (1994), *alloc. denied*, 539 Pa. 638, 650 A.2d 52 (1994). We must examine the entire record in the light most favorable to the non-moving party and resolve all doubts against the moving party when determining if there is a genuine issue of material fact. *Chrysler Credit Corp. v. Smith*, 434 Pa.Super. 429, 643 A.2d 1098, 1100 (1994). We will only reverse the lower court's grant of summary judgment if there is a manifest abuse of discretion. *Accu–Weather, Inc. v. Prospect Communications, Inc.*, 435 Pa.Super. 93, 644 A.2d 1251 (1994). Pursuant to Pennsylvania Rule of Civil Procedure 1035(b), summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

The parties agree that there is no genuine issue of material fact and that the pertinent, undisputed facts are as follows: On May 9, 1987, appellant Michelle Manfredi, a minor, was injured in a motor vehicle accident. Shortly thereafter, appellant, by her parents and natural guardians, Louis and Charlotte Manfredi, filed a suit seeking compensation for her injuries. On September 26, 1988, the lower court approved a settlement of the suit and ordered that $34,480.07 be paid "to plaintiffs, Louis and Charlotte Manfredi, as parents and natural guardians of Michelle Manfredi, a minor, to be deposited in a Mutual Fund Growth Account through Common Sense Trust." Trial Court Opinion filed 3/19/96 p. 3. A check dated October 14, 1988, and payable "to the order of Louis and Charlotte Manfredi, as parents and natural guardians of Michelle Manfredi, a minor," was distributed to appellant's parents. After receiving the check, Louis endorsed the check, and, on October 20, 1988, he deposited it into his and Charlotte's joint checking account with Dauphin Deposit. Charlotte did not endorse the check. Dauphin Deposit never received a copy of the lower court's September 26, 1988, order, and was never given any verbal limitations regarding the check at issue. After the check was deposited, Louis periodically wrote checks on the account for his own use.

In July, 1992, after appellant reached the age of majority, she realized that her father had used all of the settlement funds, except for $800, for his own purposes. As a result, she filed a Petition for Accounting. Following a hearing on the matter, the lower court entered a judgment in favor of appellant and against Louis for $48,464.80.

On January 27, 1995, appellant filed a complaint seeking to recover damages from Dauphin Deposit on the theory of conversion under the UCC and violation of Section 6372 of the UFA.[3] She argued that the bank improperly deposited the settlement check since it contained a forged and unauthorized endorsement, and that the bank violated its burden of inquiry when Louis made the deposit. Dauphin Deposit argued that appellant had no right of action for conversion and that it had a good faith defense under the UFA. The parties cross-filed motions for summary judgment. The lower court determined that there was no entitled to judgment as a matter of law. This appeal followed.

■■■ Appellant's first argument is that the bank is liable for conversion because it permitted her father, Louis, to deposit the set-

---

**1.** 7 P.S. § 6351 et seq.

**2.** 13 Pa.C.S.A. § 3103 et seq.

**3.** 7 P.S. § 6372.

tlement check in her parents' joint checking account without the endorsement of both parents.[4] Her argument is rooted in the language of 13 Pa.C.S.A. §§ 3116(2) and 3419(a)(3).[5]

Section 3116 provides the following:

**§ 3116. Instruments payable to two or more persons**

An instrument payable to the order of two or more persons:

(1) if in the alternative is payable to any one of them and may be negotiated, discharged or enforced by any of them who has possession of it; or

(2) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.

13 Pa.C.S.A. § 3116. The Comment to Section 3116(2) explains that there is a distinction between an instrument payable to "A or B" and one payable to "A and B." The second is payable only to A and B together and both must endorse it in order to negotiate the instrument. Here, the settlement check was payable "to the order of Louis *and* Charlotte Manfredi, as parents and natural guardians of Michelle Manfredi, a minor." Clearly, under Section 3116(2), Louis was not permitted to deposit the check without both his and Charlotte's endorsement or consent.

Section 3419 provides, in relevant part, that:

**§ 3419. Conversion of Instrument; innocent representative**

(a) Acts constituting conversion. An instrument is converted when:

\* \* \* \*

(3) it is paid on a forged instrument.

13 Pa.C.S.A. § 3419.[6]

Appellant avers that Louis' endorsement was forged, and, therefore, Dauphin Deposit is liable to her for conversion. Case law establishes that where a check is paid or cashed on an unauthorized or forged endorsement, the bank is liable for conversion. *Jones v. Van Norman*, 513 Pa. 572, 522 A.2d 503 (1987). Here, the endorsement was Louis' actual signature and he was authorized to endorse the check. However, case law also establishes that where there is evidence that the bank had knowledge of a limiting instruction regarding the endorser's authority, the bank may be liable for conversion. *Jones, supra*. Appellant argues that because the check was payable to Louis *and* Charlotte the bank was aware that Louis' authority was limited, and, therefore, Dauphin Deposit converted the settlement check by depositing it on the endorsement of Louis only. Neither statute nor case law is dispositive of whether a "forged instrument" includes an instrument which is payable to two persons and the two persons are not alternative payees, i.e., a check payable to A and B, and only one payee endorses the check which is accepted by a bank.[7] However, assuming

---

**4.** We note that appellant raises no issue concerning the manner in which the funds were dealt with after the initial deposit.

**5.** In determining that Dauphin Deposit was not liable to appellant for conversion, the lower court mistakenly applied 13 Pa.C.S.A. §§ 3110(d) and 3420. Pennsylvania's Commercial Code was amended substantially on July 9, 1992. Section 3110(d) replaced Section 3116 and Section 3420 replaced Section 3419. However, "[b]ecause all transactions at issue in this appeal were completed prior to the effective date of the 1992 amendments, those amendments have no application to the case *sub judice*. As such, all references to the Code contained in this [decision] are to the 'Uniform Commercial Code,' Act of November 1, 1979, P.L. 255, No. 86, § 1." *Triffin v. Dillabough*, 448 Pa.Super. 72, 670 A.2d 684, 688 n. 2 (1996), *appeal granted*, 544 Pa. 685, 679 A.2d 230 (1996).

**6.** "13 Pa.C.S.A. § 3419 is identical to the Uniform Commercial Code § 3–419. The Pennsylvania Bar Association's notes to the UCC are found in 12A Pa.S.A., as are the comments of the UCC's drafters." *Levy v. First Pennsylvania Bank*, 338 Pa.Super. 73, 487 A.2d 857, 860 n. 6 (1985).

**7.** We note that 13 Pa.C.S.A. § 3420, amended July 9, 1992, effective in one year, expressly provides that where a check is payable to "A and B" the check can be negotiated or enforced only by both persons acting jointly. If A endorses the check and B does not, the endorsement is not effective to allow negotiation of the check. If Depository Bank takes the check for deposit to A's account, Depository Bank is liable to B for conversion of the check if she did not consent to the transaction. However, as discussed previously, the 1992 amendments are not applicable to this case.

*arguendo* that a depository bank is liable for conversion if it deposits such an instrument, we cannot find that a person in appellant's position is permitted to sue the bank for conversion.

It is clear that appellant was not a holder of the settlement check.[8] The check was made payable to Louis and Charlotte, in their capacity as appellant's natural parents and guardians. Appellant's endorsement was not required to have the check deposited. Also, she could not have presented the check for payment. Simply put, the settlement check was not her property. *Stone & Webster Engineering Corp. v. First National Bank & Trust Co.*, 345 Mass. 1, 184 N.E.2d 358 (1962) (drawer of an instrument cannot sue for conversion because he was not a "holder").[9] Accordingly, we cannot find that appellant has a cause of action for conversion against Dauphin Deposit.[10]

■ Appellant's next argument is that Dauphin Deposit is liable under Section 6372 of the UFA and that the UFA's good faith defense under Section 6361 does not shield the bank from liability. We agree.

Section 6372 provides, in relevant part, that:

If any negotiable instrument, payable or indorsed to a fiduciary as such, is indorsed by the fiduciary, ... the indorsee is not bound to inquire whether the fiduciary is committing a breach of his obligation as a fiduciary in indorsing the instrument ...

and is not chargeable with notice that the fiduciary is committing a breach of his obligation as a fiduciary unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith. . . .

7 P.S. § 6372.

■ Here, there is no dispute that Louis was a fiduciary within the meaning of the UFA,[11] or that the check was endorsed solely by Louis. However, there is no evidence, nor indeed any contention, that Dauphin Deposit had actual knowledge that Louis was committing a breach of his obligation as a fiduciary when he endorsed the check and deposited it into his and Charlotte's joint checking account. The only question, therefore, is whether there were facts known to Dauphin Deposit that its action in the matter amounted to bad faith. "A thing is done in 'bad faith,' within the meaning of the act, only when it is done dishonestly and not merely negligently." *Davis v. Pennsylvania Co. For Insurances on Lives, Etc.*, 337 Pa. 456, 12 A.2d 66, 68 (1940). Section 6361 shields banks from liability when they act honestly in fiduciary relationships, that is, when they act in "good faith."[12] *Robinson Protective Alarm Co. v. Bolger & Picker*, 512 Pa. 116, 516 A.2d 299 (1986).

■ In this case, the check specifically called to the bank's attention the fiduciary

---

8. 13 Pa.C.S.A. § 1201 defines "holder" as "[a] person who is in possession of ... an instrument ... drawn, issued or indorsed to him or to his order or to bearer or in blank."

9. In the 1992 amendments, our legislature noted that the cases have been divided on whether an issuer of an instrument, an acceptor of an instrument, a payee who did not receive delivery of an instrument or an endorsee who did not receive delivery of an instrument are permitted to sue for conversion. The Comment to Section 3420 expressly states that this jurisdiction accepts the principles enunciated in *Stone, supra*, in determining who is permitted to sue banks for conversion. Although the 1992 amendments are not applicable in this case, we find the legislature's reasoning persuasive, and, therefore, we find *Stone* applicable to the case *sub judice*.

10. Appellant also argues that Dauphin Deposit is liable under 13 Pa.C.S.A. § 3307, Notice of Breach of Fiduciary Duty. Section 3307 was a

part of the 1992 amendments and became effective on July 9, 1993. As such, this statute is not applicable to this case. We note that appellant does not argue that Dauphin Deposit is liable under 13 Pa.C.S.A. § 3304, the statute which was replaced by Section 3307, and, therefore, any argument with regard thereto has been waived.

11. 7 P.S. § 6351(1).

12. 7 P.S. § 6361 provides, in relevant part, that "[a] person who, in good faith, pays or transfers to a fiduciary any money ..., which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary, and any right or title acquired from the fiduciary in consideration of such payment or transfer is not invalid in consequence of a misapplication by the fiduciary."

nature of the depositor and the fact that both Charlotte's and Louis' endorsement was required to enforce the check. However, the bank permitted the check to be deposited solely upon Louis' signature without inquiry as to Charlotte's consent. "The UFA does not permit a bank to ignore an irregularity where it is of a nature to place one on notice of improper conduct by the fiduciary. In such a case, the good faith test would not be met." *Robinson Protective Alarm Co.,* 516 A.2d at 303. We find that the failure to secure both Charlotte's and Louis' endorsement on the check, and the bank's failure to inquire as to the absence of Charlotte's endorsement, where it was clear that both endorsements were necessary, was conduct that would raise such a suspicion. Moreover, we note that Section 6361 "relieves banks of liability only when the fiduciary has the power to endorse." *Levy,* 487 A.2d at 861. The "power to endorse" in this case required both Charlotte's and Louis' signature. Also, Charlotte and Louis, together, were the payee. "If a check is made payable to the order of a person named therein, the absolute duty of a bank honoring the check is to pay only to that payee or according to his order, and no amount of care to avoid error will protect it from liability if it pays to a wrong person." *Land Title Bank & Trust Co. v. Cheltenham National Bank,* 362 Pa. 30, 66 A.2d 768, 770 (1949).

The Uniform Fiduciaries Act was designed to facilitate banking transactions by relieving the depository of the responsibility of seeing that an authorized fiduciary uses entrusted funds for proper purposes. The Act accomplishes this objective by shielding a depository from liability where it applies funds consistently with the [required] endorsement on a negotiable instrument in reliance upon a fiduciary's authority to so endorse the instrument, without further inquiry into the fiduciary's actual authority to so apply the entrusted funds.

*Lehigh Presbytery v. Merchants Bancorp, Inc.,* 410 Pa.Super. 557, 600 A.2d 593, 595 (1991) (citation omitted). The UFA is, therefore, in harmony with the clear mandate of the UCC that where an instrument is payable to two or more persons, not in the alternative, both parties must endorse it in order to negotiate the instrument. 13 Pa. C.S.A. § 3116(2). The UFA was not designed to relieve a depository from liability where, as here, the bank followed the instructions of a fiduciary which conflicted with the clear mandate of the UCC. *See Lehigh Presbytery, supra* (where depository bank credited checks to account of depositor's employee despite a rubber-stamp restrictive endorsement, UFA did not relieve bank of liability).

■ We have reviewed the cases cited by Dauphin Deposit where the bank was relieved of liability by the UFA. *See Robinson Protective Alarm Co., supra; Davis, supra; Downey v. Duquesne City Bank,* 146 Pa.Super. 289, 22 A.2d 124 (1941). In these cases, the banks were relieved of liability by the UFA because the banks relied upon the authority of the fiduciaries when they applied funds consistently with the named payees' endorsements on the instruments.[13] Such was not the case here. Accordingly, we find that Dauphin Deposit was not shielded from liability under the UFA.

For all of the foregoing reasons, we find that the lower court erred in entering summary judgment in favor of Dauphin Deposit and that summary judgment should have been entered in favor of appellant. Accordingly, we remand this case and direct the lower court to enter summary judgment in favor of appellant.

**13.** Dauphin Deposit argues that even if it was error for the bank to deposit the settlement check without Charlotte's endorsement or consent the proceeds were deposited into the parties' joint checking account. Therefore, the bank argues, there was no harm in permitting Louis to deposit the check without Charlotte's endorsement or consent. We disagree. There is no indication that Charlotte was aware that the check had been deposited into the joint checking account.

The obvious harm is that Louis was permitted to use the money for his own purposes without "interference" from his wife or daughter. The UCC does not provide an exception permitting an instrument payable to two persons to be endorsed by only one person as long as the funds are deposited into a joint checking account. *See* 13 Pa.C.S.A. § 3116. We decline to create such an exception in this case.

Reversed; remanded; jurisdiction relinquished.