Jennifer MELLEY and Stephanie Melley, Appellees,

v.

PIONEER BANK, N.A., Appellant.

Superior Court of Pennsylvania.

Argued May 21, 2003.
Filed Oct. 21, 2003.

Kenneth J. Fleisher, Philadelphia, for appellant.

Edwin P. Smith, Philadelphia, for appellees.

Before: TODD, GRACI and TAMILIA, JJ.

TAMILIA, J.

¶ 1 Pioneer Bank, N.A., appeals from the January 15, 2002 judgment entered against it following the November 29, 2000

verdict in favor of appellees, sisters Jennifer and Stephanie Melley. The court concluded appellant wrongfully allowed a third party, the girls' mother, to misappropriate and dissipate funds awarded to appellees as proceeds from a wrongful death and survival action brought on their behalf as a result of their father's death in a fire. The aggregate judgment entered against appellant and in favor of appellees was $351,385.89, plus delay damages.[1]

¶ 2 The facts underlying this appeal, as set forth by the trial court, follow.

The father of [appellees] died in a fire and an action was subsequently brought by his estate to recover damages for wrongful death and survival. A settlement was achieved and checks were cut in favor of wife, Sandra Melley, and her daughters, Stephanie and Jennifer Melley [then minors]. By Orders dated September 30, 1987 and February 3, 1988, the Court of Common Pleas of Philadelphia directed that the settlement checks be made out in favor of the mother, Sandra Melley for the benefit of the minor [appellees] as parent and natural guardian of the children, Stephanie and Jennifer.

On November 20, 1987, Sandra Melley appeared at [appellant] bank in upstate Pennsylvania and opened a new account in her name only. She was permitted to deposit the first set of settlement checks therein, which were made payable to Sandra Melley, as parent and natural guardian of Stephanie and Jennifer Melley. No further restrictions were included on said checks. On March 4, 1988, Sandra Melley appeared at the same bank and made a further deposit of a second set of checks from the same settlement funds. These checks clearly stated that the funds were made payable to Sandra Melley, as parent and natural guardian of Stephanie and Jennifer Melley, minors *pursuant to Court Order, dated February 3, 1988.*

These transactions were completed by an employee of the [appellant] bank, Ms. Chapman, who was in customer service at the branch where the account was established.

Trial Court Opinion, Watkins, J., 1/16/03 at 2 (emphasis in original, citations omitted). Appellees brought suit on February 24, 1997, alleging, *inter alia,* that appellant wrongly allowed their mother to convert the funds owned by them and deposited in appellant bank. Judgment was entered in appellees' favor, post-trial motions were denied, and this appeal followed.

¶ 3 The September 30, 1987 Order states in pertinent part that distribution of the sisters' share would be payable to

Sandra Melley, as parent and natural guardian of Jennifer Melley, a minor (Date of birth 12/7/75), said sum to be deposited in a federally insured restricted bank account not to be withdrawn until the minor reaches her eighteenth birthday on 12/7/93.

Plaintiffs' Exhibit 1. The Order relative to appellee Stephanie was worded identically, with the child's July 5, 1978 birthdate indi-

---

1. The judgment awarded Jennifer $159,247.25, a figure which includes interest payable from the date the funds were deposited into appellant bank until Jennifer's eighteenth birthday on December 7, 1993. It also provided for delay damages to be calculated from December 7, 1993 at a rate of 6.0%. The judgment awarded Stephanie $192,138.64, which likewise included interest payable from the date the funds were deposited until Stephanie's eighteenth birthday on July 5, 1996. It also provided for delay damages to be calculated from July 5, 1996 at a rate of 8.5%. The interest rates were calculated to be the average prime interest rate from the year in which the checks in question were deposited until such time as each girl reached age eighteen.

cated. *Id.* Each child was to receive $53,751.45.

¶4 The February 3, 1988 Order stated the individual awards to the sisters were to be made payable to

> Sandra Melley, as parent and natural guardian of Jennifer Melley, a minor (Date of birth 12/7/75), said sum to be deposited in a federally insured restricted bank account not be withdrawn until the minor reaches her eighteenth birthday on 12/7/93.

Plaintiffs' Exhibit 3. Once again, the Order relative to Stephanie was worded identically, with her July 5, 1978 birthdate substituted and funds not to be withdrawn until her eighteenth birthday on 7/5/96. *Id.* Each child was to receive $44,444.45.

¶5 Appellant raises six issues on appeal.

1. Did the [t]rial [c]ourt err as a matter of law by failing to find in the bank's favor based upon protections set forth in the Uniform Fiduciaries Act ("UFA")?

2. Did the trial court err as a matter of law in finding the Bank's conduct to be the proximate cause of [appellees'] damages in light of the intervening, superseding criminal actions and/or conversion of [appellees'] mother?

3. Are Jennifer Melley's claims barred by the applicable statute of limitations?

4. Were the Bank's actions consistent with the requirements of the Uniform Commercial Code ("UCC")?

5. Did the [t]rial [j]udge improperly calculate interest or delay damages?

6. Was the [t]rial [c]ourt bound by the "law of the case" erroneously estab-lished in pre-trial orders of a different [j]udge?

Appellant's brief at 4.

¶6 Appellant first argues its teller's actions were protected from appellees' claim by the Uniform Fiduciaries Act (UFA), 7 P.S. § 6351, *et. seq.* Section 6372 of the UFA, **Transfer of negotiable instruments by fiduciary**, provides a bank's actions may be protected by its demonstrated "good faith." This "good faith" section states generally that if the fiduciary, herein mother, indorses [2] the instrument, the indorsee, herein appellant bank, "is not bound to inquire whether the fiduciary is committing a breach of his obligation as fiduciary in indorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is committing a breach of his obligation as fiduciary *unless he takes the instrument with actual knowledge of such breach or with knowledge of such facts that his action in taking the instrument amounts to bad faith.*" (Emphasis added). Relying on this section, appellant believes its actions were protected, and appellees did not establish the bank's actions fell below "a reasonable standard of commercial practice," or that it acted in bad faith. Appellant's brief at 16.

[I]t is critical to understand that no *restrictive* language appears on the face of either the December Checks or the March Checks (together, the "Settlement Checks"). Language on the "payee" line of the Settlement Checks identifying Sandra Melley as the parent and natural guardian of the individual [appellees] is merely descriptive; however, it neither creates a "restriction" on the deposit of the Settlement Funds nor places the Bank on notice of the exis-

---

**2.** We use the spelling "indorse", as opposed to "endorse", to be consistent with the UFA and Pennsylvania's Commercial Code. *See, e.g.,* 7 P.S. § 6372, **Transfer of negotiable** instruments by fiduciary, and 13 Pa.C.S.A. § 3205, **Special indorsement; blank indorsement; anomalous indorsement.**

tence of any such restriction. In fact, under the UFA, the Bank has *no duty of inquiry* as to the existence of a restriction even if suspicious circumstances exist (which the facts of this case do not reflect in any manner). Without notice, knowledge or duty of inquiry concerning the existence of a restriction, there is no basis in law to find the Bank acted in bad faith.

*Id.* at 17 (emphasis in original, citation omitted). Appellant also argues it was justified in creating a general account owned by mother, and was under no obligation to deposit the checks into a "special account." "[E]ven if the Bank *knew* of the fiduciary nature of the funds, such would not have mandated their segregation in a special account. Accordingly, the Bank *followed* the law and certainly did not violate an unknown duty to a third party." Appellant's brief at 20 (emphasis in original).

¶ 7 Appellees respond appellant is not protected by the UFA since the indorsement was unauthorized because the checks were improperly indorsed in blank rather than as "parent and natural guardian of. . ." In support of this argument, appellees cite *Levy v. First Pa. Bank,* 338 Pa.Super. 73, 487 A.2d 857 (1985), in which this Court concluded an unauthorized indorsement is the same as a forgery for purposes of a conversion action. Since the indorsements in *Levy* were unauthorized, the bank was liable for conversion.

¶ 8 Appellees' reliance on *Levy* in this regard is misplaced. In *Levy,* clients directed the attorney to deposit checks payable to their corporations into their personal bank accounts. *Levy,* at 859. The attorney then restrictively indorsed the checks for deposit into his own personal account using the names of the payees. *Id.* The *Levy* Court upheld the trial court's finding that the attorney was not authorized to restrictively indorse the checks as he did since his clients told him to deposit the checks into their accounts. *Id.,* at 860. Here, in contrast, the checks were made payable to mother, albeit in a fiduciary capacity, which she then indorsed in blank, not restrictively.

¶ 9 The *Levy* Court considered the applicability of UFA Section 6393, **Deposit in fiduciary's personal account,**[3] which relieves a bank from liability for accepting for deposit a check payable to a fiduciary as such into the personal account of the fiduciary, provided the bank does so without knowledge the fiduciary is breaching his obligations and without knowledge of such facts that its accepting of the deposit amounts to bad faith. The *Levy* Court found the UFA did not protect the bank from liability, but not because the attorney lacked the power to indorse. As the *Levy*

---

3. Section 6393 of the UFA provides

If a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary; *or of checks payable to him as fiduciary;* or of checks drawn by him upon an account in the name of his principal, if he is empowered to draw checks thereon; or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks; or if he otherwise makes a deposit of funds held by him as fiduciary,—the bank receiving such deposit is not bound to inquire whether the fiducia-ry is committing thereby a breach of his obligation as fiduciary, and the bank is authorized to pay the amount of the deposit, or any part thereof, upon the personal check of the fiduciary, without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith. (Emphasis supplied.)

Court explained, under the holding of *Bacher v. City National Bank of Philadelphia*, 347 Pa. 80, 31 A.2d 725 (1943), a fiduciary has the power to indorse checks, and as long as a fiduciary has any power at all to indorse checks, he has the "power to indorse" required under the UFA.[4] Rather, the bank in *Levy* was not protected by the UFA since *neither* the checks *nor* the indorsement indicated the fiduciary nature of the deposit. *Levy, supra*, at footnote 13. The UFA shields a bank from negligence only when the bank knows one party is acting for another. *Id.*

¶ 10 We conclude mother, as fiduciary and named payee, had the power to indorse the checks as required by the UFA, and since the bank had knowledge of the fiduciary nature of the transaction from the face of the checks, the UFA is applicable.

¶ 11 "The Uniform Fiduciaries Act was designed to facilitate banking transactions by relieving the depository of the responsibility of seeing that an authorized fiduciary uses entrusted funds for proper purposes." *Manfredi v. Dauphin Deposit Bank*, 697 A.2d 1025, 1030 (Pa.Super.1997), *appeal denied*, 553 Pa. 690, 717 A.2d 1028 (1998). Clearly, the UFA anticipates a scenario in which a fiduciary deposits a check payable to the fiduciary as such into his own personal account since UFA section 6393 protects a bank from liability for accepting such deposits unless the bank acts knowing the fiduciary is breaching her fiduciary duty or with knowledge of such facts that its actions constitute bad faith. Likewise, UFA section 6372 protects the bank from liability as indorsee of the checks and does not require the bank to

inquire as to whether the fiduciary is breaching his fiduciary duty with the same exceptions. Accordingly, we must determine whether the bank possessed actual knowledge of mother's breach or acted in bad faith.

¶ 12 "A thing is done in 'bad faith' within the meaning of the [UFA], only when it is done dishonestly and not merely negligently." *Manfredi, supra* at 1029. "The UFA does not permit a bank to ignore an irregularity where it is of a nature to place one on notice of improper conduct by the fiduciary. In such a case, the good faith test would not be met." *Id.,* at 1030. Bad faith or dishonesty in this context is, unlike negligence, willful. *Davis v. Pennsylvania Co.,* 337 Pa. 456, 460, 12 A.2d 66, 69 (1940). It amounts to an intentional desire to evade knowledge because of a belief or fear that inquiry would disclose a vice or defect in the transaction. *Id.*

¶ 13 We find the bank, by allowing mother to deposit these checks into her personal account, exhibited bad faith. Appellant ignored an irregularity of a nature that placed it on notice of improper conduct on mother's part.

¶ 14 Carol Chapman, appellant's employee who opened the account for mother and accepted the deposit of the first two checks at issue, testified she commonly dealt with restricted accounts. N.T., 10/17/2000, at 11. She testified checks coming from settlements for minors and subject to court Orders were *always* payable to someone "as parent and natural guardian of" the children, as were the checks at issue here, and *always* contained restrictive language

---

4. We also note the language of UFA Section 6393, as quoted at footnote 3, addressing a check payable to the fiduciary as a fiduciary, as the checks here, contains no qualification that requires the fiduciary to have the "power to indorse" as with a check payable to the principal and indorsed by the fiduciary. This lack of qualification implies the fiduciary does have the power to indorse a check payable to him as a fiduciary.

on the check *and* were accompanied by a court Order or a letter. *Id.*, at 25–26. She also testified this was the first time she had ever received for deposit an attorney's check payable to the order of a guardian on behalf of minor children where restrictive language did not appear on the check. *Id.*, at 33. Yet, she testified she did not have the "slightest inkling" the checks may have been intended for deposit in a restricted account. *Id.*

¶ 15 Patricia Cobb, who at the time of her testimony was appellant's executive vice-president[5] and in-house attorney and had been employed by appellant for seventeen (17) years, testified that with the exception of this case, she had never seen a situation involving a minor's settlement in which the checks were not sent by the law firm and accompanied by a instructional letter and a copy of the court Order. N.T., 10/16/2000, at 43–44, 55–56. Moreover, such transactions were very common and routine at the bank. *Id.*, at 57–58. The accompanying letters normally instructed the bank to place the funds in a restricted account and stated the date on which the funds could be withdrawn, i.e. the minor's eighteenth birthday. *Id.*

¶ 16 We find the irregularity of these transactions, given all four checks were drawn on an attorney's account and made payable to mother as guardian of minor children, and two *explicitly* referenced court Orders, put the bank on notice that deposit into mother's personal account was improper. While it is conceivable, despite appellant's experience and practice with restricted accounts of the nature of those

here at issue, its officers would have treated the first two checks as unrestricted, receipt of the later two checks with their explicit references to court Orders, put appellant fully on notice of the attendant restrictions and required appellant to treat them with the care required with such accounts. It likewise required appellant to undertake any steps necessary to correct the improper treatment of the previous deposits and to take necessary steps to recover funds withdrawn by mother.

¶ 17 Also indicative of the irregularity of the transactions is the fact that they involved approximately $200,000, which, as Cobb conceded, was a large amount of money for the institution. *Id.*, at 58. Significant too are the facts that mother was unknown to appellant prior to opening the account on November 20, 1987, indicated on the account application she was unemployed and provided only a P.O. Box as an address. Trial Court Opinion at 2.[6]

¶ 18 Appellant may have chosen to ignore the irregularities of the transactions since, as Chapman testified, the more money coming into the branch, the better for her in terms of promotions. N.T., trial, 10/17/2000, at 17–18. Moreover, Cobb testified employees were not instructed to inquire as to a court Order for fear of offending the customer. N.T., trial, 10/16/2000, at 61. Chapman further testified mother was a "striking woman", who she liked. N.T., trial, 10/17/2000, at 11, 22. Regardless of appellant's reasons for its willful ignorance, we find appellant exhibited bad faith in doing so.

5. Significantly, in her position as executive vice president, the department of Deposit Compliance reports to her. N.T., 10/16/2000, at 41.

6. We also find it noteworthy that mother attempted to open accounts and deposit settlement checks at the First National Bank of Lake Ariel but experienced difficulties in doing so. First National requested court documentation from mother's attorney regarding the settlement and indicating the conditions for establishing the accounts. Plaintiff's exhibit 8, *Deposition of Sandra Melley* (exhibit 7).

¶ 19 Since we find appellant acted in bad faith, it is not protected from liability by the UFA. Accordingly, we reject appellant's first contention of error.

¶ 20 Appellant next alleges the trial court erred as a matter of law in finding appellant's conduct to be the proximate cause of appellees' damages in light of the alleged intervening, superseding criminal actions and/or conversion of mother.

¶ 21 Intervening, superseding causation is a negligence concept. Restatement Second of Torts § 447. We have found appellant acted in bad faith, not merely negligently. Again, "[a] thing is done in 'bad faith' within the meaning of the act, only when it is done dishonestly and not merely negligently." *Manfredi, supra* at 1029. Moreover, appellant argues mother's acts were not reasonably foreseeable. In order for another's act to be an intervening, superseding cause, the other's acts must be unforeseeable. *Estate of Flickinger v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); Restatement Second of Torts § 447. On the contrary, as explained above, we have found the irregularity of the transaction put the bank on notice of mother's improper conduct. We further stress the UFA would have protected appellant from liability for mother's acts if it had not acted with actual knowledge of mother's breach of her fiduciary duty or had not acted in bad faith. The UFA clearly contemplates liability when the depository acts in bad faith, as we have found here.

¶ 22 Appellant next alleges Jennifer Melley's claims are barred by the applicable two-year statute of limitations,[7] in that Jennifer turned eighteen years old on December 7, 1993 and the underlying lawsuit was filed February 24, 1997. Appellant claims a two-year limitations period applies under the UFA,[8] and to causes of action based upon fraud or breach of fiduciary duty.[9] Appellant's brief at 31. Appellees, in contrast, characterize this as a breach of contract action,[10] to which a four-year statute of limitations applies.[11] They allege appellees were intended third party beneficiaries of the deposit contract between appellant and mother which appellant breached by failing to protect appellees' interests. Appellees' brief at 3. Appellees also characterize the action as tort for aiding and abetting mother's breach of fiduciary duty. *Id.*, at 4. Although a two-year statute of limitations

---

7. We note the trial court did not address this issue in its Opinion. Trial Court Opinion, Watkins, J., 1/16/03. To determine the applicable statute of limitations, however, it is necessary to characterize the cause of action. The trial court did not expressly state the cause of action but stated, "[t]he UFA is thus specifically creating liability in a bank for remaining passive when a fiduciary is permitted through such passivity to act improperly." *Id.* at 8. We disagree that the UFA "creates liability." Rather, we find the UFA "protects from liability" under certain circumstances. *See Robinson Protective Alarm v. Bolger & Picker*, 512 Pa. 116, 125, 516 A.2d 299, 304 (1986) (concluding no provision of the UFA restricts the immunity from liability to suits based on negligence or precludes its applicability to suits based on a contract theory).

8. Appellant cites as authority for this contention *Schwartz v. Pierucci*, 60 B.R. 397 (E.D.Pa.1986).

9. 42 Pa.C.S.A. § 5524, **Two year limitation.**

10. Having concluded that the UFA is applicable in this case, we note nothing in the UFA precludes its applicability to claims for recovery based on a contract theory as opposed to those based on tort theories such as fraud, conversion or negligence. *Robinson Protective Alarm v. Bolger & Picker*, 512 Pa. 116, 125, 516 A.2d 299, 304 (1986).

11. 42 Pa.C.S.A. § 5525, **Four year limitation.**

applies to tort actions,[12] appellees argue the discovery rule applies and tolls the statute until February 1997 at which time they claim Jennifer first learned of the disposition of the funds. The applicable statute of limitations began to run on the date Jennifer turned eighteen,[13] unless the discovery rule applies.

The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until that point when "the plaintiff knows or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." The limitations period begins to run when the injured party "possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress."

Whether the statute has run on a claim is usually a question of law for the trial judge, but where the issue involves a factual determination, the determination is for the jury. Specifically, the point at which the complaining party should reasonably be aware that he has suffered an injury is generally an issue of fact to be determined by the jury. Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law.

*Pearce v. Salvation Army,* 449 Pa.Super. 654, 674 A.2d 1123, 1125 (1996) (citations omitted).

¶ 23 Jennifer testified she sought legal assistance to determine the disposition of the funds prior to her eighteenth birthday but the attorney was unable to assist her. N.T., 10/16/2000, at 24–25. Also prior to her eighteenth birthday, Jennifer confronted mother about the disposition of the funds, at which time mother admitted to using some of the money. Plaintiff's Exhibit 8, Deposition of Sandra Melley at 62–63. In 1993, just prior to Jennifer's eighteenth birthday, Jennifer's brother, acting as guardian of his sisters, retained an attorney, Christopher Jones, Esquire, and initiated a suit to recover the settlement funds. N.T., 10/16/2000, at 24–25. The record reflects correspondence regarding the suit from Jones to Jennifer in December 1993, shortly after her eighteenth birthday. Defense Exhibit D–7, Deposition of Jennifer Melley. The suit named appellant as a defendant, as reflected in the case caption of the correspondence from Jones to Jennifer.[14] *Id.*

¶ 24 We find Jennifer Melley was aware in December 1993 she had been injured and her injury was caused by the conduct of another. Accordingly, the discovery rule does not toll the statute of limitations for her. Since this suit was initiated more than two years after Jennifer's eighteenth birthday, her claims are barred unless

12. *Id.,* § 5524, **Two year limitation.**

13. The applicable version of 42 Pa.C.S.A. § 5533, **Infancy, insanity or imprisonment,** provides in relevant part:
(b) **Infancy.**—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.
This version of § 5533 went into effect thirty days following its enactment on May 30, 1984.

14. Jones contends he ultimately declined to represent appellees' interests in the matter. Pre-trial memorandum of Jones, 11/19/1998.

they can be characterized as breach of contract claims so that a four year statute of limitations applies.

¶ 25 For appellees to be third party beneficiaries of a contract there must be a contract. "[I]t is established in Pennsylvania that the legal relationship between a financial institution and its depositors is based on contract." *McGuire v. Shubert,* 722 A.2d 1087, 1091 (Pa.Super.1998) *appeal denied,* 560 Pa. 707, 743 A.2d 921 (1999). Appellees in their complaint alleged appellant was "under a contractual obligation to retain said funds solely in accordance with said court orders and solely for the benefit of the [appellees]". Complaint, paragraph 9.

[A] party becomes a third party beneficiary only where both parties to the contract express an intention to benefit the third party in the contract itself, *unless,* the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

*Scarpitti v. Weborg,* 530 Pa. 366, 372–373, 609 A.2d 147, 150–151 (1992) (citations omitted, emphasis in original), *see also* Restatement 2nd Contracts § 302.[15]

¶ 26 We cannot find both parties expressed an intention to benefit appellees. Accordingly, we look to the second test articulated above.

The first part of the test sets forth a standing requirement which leaves discretion with the court to determine whether recognition of third party bene-

ficiary status would be appropriate. The second part defines the two types of claimants who may be intended as third party beneficiaries. If a party satisfies both parts of the test, a claim may be asserted under the contract.

*Scarpitti, supra,* at 371, 609 A.2d at 150.

¶ 27 Considering the compelling circumstances surrounding the transactions at issue, we find recognition of third party beneficiary status is appropriate in this case. Since mother deposited and appellant accepted all four checks payable to mother as guardian of her minor children, we conclude the third party beneficiary relationship was within the contemplation of both the promisor (appellant) and promisee (mother) at the time of contracting. Moreover, we find in accepting the checks for deposit, appellant had a contractual duty to inquire as to the court Orders and abide by their mandates. "When interpreting a contract, a court will imply an agreement by the parties ... to do and perform those things that according to reason and justice they should do in order to carry out the purpose for which the contract was made..." *Kramer v. Carrabino,* 425 Pa.Super. 222, 624 A.2d 648 (1993), *appeal denied,* 538 Pa. 671, 649 A.2d 673 (1994) (citation omitted). As we previously concluded, appellant ignored the anomalous nature of these transactions as they were the only transactions the appellant's testifying employees had ever seen in which checks were drawn on an attorney's account, payable to a parent as guardian of minor children in which the checks were not sent directly from the attorney and accompanied with instructions for deposit and a copy of the court Order. Additionally, two of the four checks specifically referenced court Or-

**15.** Our Supreme Court adopted Section 302 of the Restatement 2nd of Contracts in *Guy v.*

*Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983).

ders. Appellant, therefore, had a contractual duty to inquire into and abide by the court Orders and breached this duty by failing to do so. Since appellees have the greatest interest in enforcement of the court Orders, recognition of their standing as third party beneficiaries is appropriate. We also find the second prong of the test is satisfied since payment by appellant satisfies mother's (promisee's) obligation to pay money to appellees (beneficiaries).

¶ 28 Since we have concluded appellees had standing as third party beneficiaries to the deposit contract, and also that appellant breached that contract by failing to inquire into and abide by the court Orders, a four-year statute of limitations therefore, applies to this cause of action. Since Jennifer turned eighteen in December 1993 and this action was initiated in February 1997, her claims are not barred.

■ ¶ 29 Appellant next claims it should not be held liable because its actions were consistent with the requirements of the Uniform Commercial Code ("UCC"). Specifically, appellant argues the checks did not have any indication of a restrictive indorsement as set forth in 13

Pa.C.S.A. § 3205, **Restrictive indorsements**.[16] Accordingly, appellant argues, it was required to negotiate the instruments as instructed by mother, the named payee. We agree mother did not restrictively indorse the checks. Further, we have found mother had the power to indorse the checks as she did. This, however, does not preclude appellant's liability. We held appellant is liable under a contract theory and is not protected by the UFA since we found it acted in bad faith in accepting the checks for deposit.

■ ¶ 30 Appellant next alleges the trial court improperly calculated interest or delay damages. With regard to delay damages, we first note the obvious, Pa. R.Civ.P. 238, **Damages for Delay in actions for Bodily Injury, Death or Property Damage**, applies only to certain civil actions, i.e. tort claims for bodily injury, death or property damage. Further, it requires the plaintiff to request delay damages by filing a written motion requesting such and setting forth the computation.[17] The trial court in its verdict improperly awarded delay damages *without* a request from appellees.[18] Accordingly, we vacate the award of delay damages.

---

16. The version in effect at the time of the transactions at issue is as follows.

13 Pa.C.S.A. § 3205. **Restrictive indorsements.**

An indorsement is restrictive which either:
(1) is conditional;
(2) purports to prohibit further transfer of the instrument;
(3) includes the words "for collection," "for deposit," "pay any bank," or like terms signifying a purpose of deposit or collection; or
(4) otherwise states that it is for the benefit or use of the indorser or of another person.

17. Pa.R.Civ.P. 238, **Damages for Delay in actions for Bodily Injury, Death or Property Damage**, provides in relevant part:

(a)(1) At *the request of the plaintiff* in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant. . . .

. . .

(c) Not later than ten days after the verdict or notice of the decision, the plaintiff may file a written motion requesting damages for delay and setting forth the computation. . . .

Also, an explanatory comment provides, "[f]irst, plaintiff must request damages for delay by written motion filed within ten days after the verdict or notice of decision. . . . The motion should include a computation for delay damages."

18. We also note the trial court improperly awarded delay damages from the date of appellees'° eighteenth birthdays rather than one year from the date process was served. Pa. R.Civ.P. 238(a)(2) provides

¶ 31 Appellant also claims the trial court erred by awarding interest since the court Orders did not mandate deposit into an interest bearing account but only a federally insured account. We disagree. "Our courts have generally regarded the award of prejudgment interest as not only a legal right, but also as an equitable remedy awarded to an injured party at the discretion of the trial court." *Kaiser v. Old Republic Ins. Co.,* 741 A.2d 748, 755 (Pa.Super.1999). Further, we have found appellees can recover on a contract theory as third party beneficiaries. "It is well settled that in contract cases, pre-judgment interest is awardable as of right." *Id.* Accordingly, the award of interest was proper.

¶ 32 Finally, appellant contends a trial court judge in a February 12, 1998, pre-trial Order erroneously established "the law of the case" by which the trial court should not have been bound. The Order in relevant part provides as follows:

The following shall obtain [sic] as the law of this case: Pioneer American Bank, N.A. [appellant] was authorized to permit the withdrawal of the funds from the account in question *only* by drafts in favor of the named payee and upon its knowledge of an order of the Court approving or authorizing such withdrawal. The case of *Manfredi v. Dauphin Deposit Bank,* 697 A.2d 1025 (1997) is distinguished from the instant case. In *Manfredi,* no further order of that Court was required for future withdrawals or that the Bank there had knowledge of such requirement.

Plaintiff's exhibit 5, Order of 2/12/1998.

¶ 33 Appellant filed a motion for reconsideration which the trial court denied by the February 26, 1998 Order which provided

AND NOW, this 26th day of Feb. 1998, The Motion to Amend the Order of February 12, 1998 is hereby Denied. Memorandum: The Order of 2/12/98 does not preclude evidence relevant to issues in the case.

Defense Exhibit D–6, Order of 2/26/1998.

¶ 34 The "law of the case doctrine" is simply that "a court involved in later phases of a litigated matter should not reopen questions decided by another judge of the same court or by a higher court in earlier phases." *Riccio v. American Republic Ins. Co.,* 550 Pa. 254, 261, 705 A.2d 422, 425 (1997).

¶ 35 First, we agree with the February 12, 1998, Order that *Manfredi* is distinguishable from the instant case, albeit for reasons other than those expressed in that Order. In *Manfredi,* a bank accepted for deposit a check indorsed by father only and into father's personal account a check payable to both mother and father as parents and natural guardian of their minor child. This Court found the bank was liable since it accepted the check with an improper indorsement, i.e. the father's signature alone without mother's. The UFA did not protect the bank since father had no power to so indorse the instrument and since it acted in bad faith in accepting such an indorsement by ignoring an irregularity that put it on notice of father's improper conduct. Here, in contrast, we have found mother had the power to indorse the instruments as she did.

¶ 36 We agree with the February 12, 1998 Order that appellant was authorized to permit the withdrawal of funds from the account in question only by drafts in favor

(2) Damages for delay shall be awarded for the period of time from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

of the named payee and upon its knowledge of an Order of the court approving such withdrawal. The September 30, 1987 and February 3, 1988 Orders state the funds were to be deposited in restricted accounts and were not to be withdrawn until the minors' respective eighteenth birthdays. Withdrawal prior to that time would have required a court Order.

¶ 37 We also fail to see how the February 12, 1998 Order prejudiced appellant. Appellant argues although no evidence was precluded by the Order, no evidence was thereafter relevant. Appellant's brief at 39. Appellant does not, however, specify any evidence it would have offered but was precluded from doing so. Moreover, appellant reiterates its arguments that it complied with the requirements of the UCC and had no knowledge the funds were to be placed in a restricted account. *Id.*, at 40–41. We have already disposed of these arguments.

¶ 38 While we have acknowledged that the nuances of fiduciary law and banking practices provide some parameters of freedom for banks to deal with fiduciary accounts without unreasonably incurring liability, under the facts of this case, the trial court properly weighed the evidence in conformity with the law to provide substantial justice and to place the burden and consequences of the transactions engaged in on the party most capable of assuring that innocent persons would not be harmed.

¶ 39 Judgment affirmed but for delay damages, which are hereby vacated.

¶ 40 Jurisdiction relinquished.