**In re John William THOMPSON and Kelli Leann Thompson, Debtors.**

**Nick Wieberg, Plaintiff,**

**v.**

**John William Thompson and Kelli Leann Thompson, Defendants.**

**Bankruptcy No. 03–62656.**
**Adversary No. 04–6017.**

United States Bankruptcy Court,
W.D. Missouri.

Oct. 26, 2004.

Mark A. Rice, Springfield, MO, for Debtors.

*ORDER GRANTING IN PART, AND DENYING IN PART, DEFEN-DANT'S MOTION TO ALTER OR AMEND*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff Nick Wieberg filed this adversary proceeding to object to the dischargeability of a deficiency claim in the amount of $53,888. On September 22, 2004, this Court entered judgment in favor of Wieberg, pursuant to section 523(a)(6) of the Code, and held the debt to be nondischargeable. The Thompsons filed a motion to alter or amend that judgment. They make three substantive arguments and three technical arguments. As to the technical arguments, the points are well taken. The Thompsons ask that the Court delete the reference to an "affirmative defense." The Court agrees. The Thompsons moved for leave of court to amend their Answer to conform to the evidence. In addition, the Court finds that the Thompsons filed a Motion for Judgment at the Close of Plaintiff's Evidence, as well as a Motion for Judgment at the Close of All

Evidence. And finally, as requested by the Thompsons, the Clerk of Court will issue an amended judgment that reflects that a decision was reached after a trial on the merits.

As to the substantive arguments, the Thompsons claim as follows: (1) that the Court used an incorrect legal definition for the word "encumbrance;" (2) that the Court failed to show the Thompsons' conversion was the proximate cause of Wieberg's loss; and (3) that the Court incorrectly shifted the burden of proof to the Thompsons to give some justification for the disappearance of the cattle. I will deal with each argument in turn.

■ The Thompson argue that the use of the term encumbrance can only apply to an interest in real estate, and cannot be used to refer to a security interest in personal property. As Wieberg points out in his reply to the Thompsons' motion to alter or amend, this dispute involves a contract between laymen. Counsel for the Thompsons cited numerous cases for the premise that statutes should be construed according to their defined terms, but failed to cite one case that held that the term encumbrance could never be used to evidence the grant of a security interest in personal property. In fact, this Court cited numerous instances in which Courts have used the term to denote a security interest in personal property. Nor did the Thompsons cite a case that stands for the premise that the mere use, or misuse, of the word "encumbrance" would defeat the intent of the parties to create a security interest. The Thompsons incorrectly rely on *Shelton v. Erwin*,[1] for this premise. As the Court stated in *Shelton*, there must be some language in the agreement itself that can

1.  472 F.2d 1118 (8th Cir.1973).

be construed to convey a security interest.[2] In *Shelton*, the parties clearly intended to create a security interest in a vehicle in favor of the seller, however, the only documents memorializing their intent were a bill of sale and a title application. The Eighth Circuit stated that, notwithstanding the intent of the parties, "there must be some language in the agreement actually conveying a security interest."[3] But, there is no magic language necessary to create or provide for a security interest.[4] As I found, the plain and ordinary language of the Cattle Sales Agreement, taken as a whole, provides for and creates a security interest in the cattle Wieberg sold to the Thompsons. Given that the Uniform Commercial Code requires no specific language to create a security interest, and given that the plain meaning of encumbrance can denote an interest in personal, as well as real, property,[5] I find that the parties did use granting language in the Cattle Sales Agreement, that they intended to create a security interest in the cattle, and that the Cattle Sales Agreement accomplished that intent.

■ The Thompsons next argue that Wieberg's failure to perfect his security interest, rather than any actions on their part, was the proximate cause of his injury. In other words, if Wieberg's lien had been ahead of the Farm Service Agency's (FSA) lien, there would have been sufficient cattle to satisfy Wieberg's claim, and the shortage would have been FSA's prob-

lem, not his. Proximate cause, or "intervening, superseding causation" is a negligence concept.[6]

The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

(a) the actor [Wieberg] at the time of his negligent conduct should have realized that a third person might so act, or

(b) a reasonable man knowing the situation existing when the act of the third person [the Thompsons] was done would not regard it as highly extraordinary that the third person had so acted, or

(c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not extraordinarily negligent.[7]

Moreover, in order for Wieberg's act to be the intervening, superseding cause of harm, the actions of the Thompsons must have been unforeseeable.[8] In other words, in order to find Wieberg's actions were the proximate cause of his injury, I would first have to find that the conversion by the Thompsons was a negligent act that was foreseeable. But in this case, I found that the Thompsons acted willfully and mali-

**2.** *Id.,* at 1119.

**3.** *Id.* at 1120.

**4.** *United States v. Missouri Farmers Assoc., Inc.,* 580 F.Supp. 35, 36 (E.D.Mo.1984).

**5.** *See Automobile Acceptance Corporation v. Universal C.I.T. Credit Corporation,* 216 Md. 344, 139 A.2d 683, 688 (App.1958) (holding that the reservation of a legal title for security purposes under a contract of conditional sale

constitutes an encumbrance and precludes the idea found in older definitions that encumbrance is limited to real property).

**6.** *Melley v. Pioneer Bank,* 834 A.2d 1191, 1199 (Pa.Super.2003) (citing Restatement of Torts § 447 (1965)).

**7.** Restatement 2nd Torts § 447 (1965)

**8.** *Melley,* 834 A.2d at 1199.

ciously. The case of *Collins v. Palm Beach Savings & Loan (In re Collins),*[9] is similar to the situation in this case. In *Collins,* the debtors induced a loan by filling out a false financial statement. Even though the bank failed to perfect the security interest Collins granted it in the transaction, the court found the resulting debt to be nondischargeable in Collins' subsequent bankruptcy filing.[10] The Eleventh Circuit concluded that, even though the bank could have prevented its own injury by perfecting its interest in its collateral, the Code does not require such diligence on the part of a creditor harmed by the intentional tort of a debtor.[11] The court went on to state as follows:

> Congress provided for nondischargeability in order that dishonest debtors would not benefit from their wrongdoing. "The debtor attempting to abuse the proceedings of bankruptcy is not entitled to the complete medley of Bankruptcy Code protections. The Bankruptcy Code, thereby, attempts to discourage such abuse."[12]

In *Siriani v. Northwestern National Insurance Company (In re Siriani),*[13] the Ninth Circuit stated that "[i]n almost every case, there will be a range of potential outcomes; we decline to require bankruptcy courts to divine what might have happened."[14] The court felt that the burden on a defrauded creditor is too great if it leads the court to indulge in entirely too much speculation as to what a creditor might have done under hypothetical circumstances.[15] In other words, this Court will not indulge in speculative analysis regarding whether Wieberg would have been made whole had he perfected, or whether he would have been made whole had the Thompsons not converted his collateral or the FSA's collateral. The fact is that the Thompsons failed to account for cattle upon which Wieberg held a lien, and their actions proximately caused injury to Wieberg.

■ Finally, the Thompsons argue that this Court improperly shifted the burden to them to explain the loss of cattle. They claim that not only did Wieberg have to prove that 82 cows, subject to his security interest, were unaccounted for, but he also had to prove that the Thompsons stole, or, somehow, improperly disposed of them.

In *Barclays American Business Credit, Inc. v. Long (In re Long),*[16] the Eighth Circuit addressed the issue of conversion in the section 523(a)(6) context. The Court found that a conversion of property alone is not enough, in itself, to prevent the discharge of a debt.[17] Only when the conversion is "(1) headstrong and knowing ('willful') and, (2) targeted at the creditor ('malicious'), at least in the sense that the conduct is certain or almost certain to cause financial harm" will the resulting debt be nondischargeable.[18] In *Long,* the debtor admitted the conversion, but offered a business justification that convinced the court that the conversion was

---

9. 946 F.2d 815, 816 (11th Cir.1991).

10. *Id.* at 816.

11. *Id.*

12. *Id.* at 817 (quoting *TranSouth Fin. Corp. of Florida v. Johnson,* 931 F.2d 1505, 1508 (11th Cir.1991)).

13. 967 F.2d 302 (9th Cir.1992).

14. *Id.* at 306.

15. *Id.* at 306.

16. 774 F.2d 875 (8th Cir.1985).

17. *Id.* at 879 (citing *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332–33, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934)).

18. *Id.* at 881.

not willful and malicious. Here, the Thompsons admitted the loss of cattle, but did not admit the conversion. Thus, they offered no justification. Based on all the evidence, I found that they converted the cattle, and that such conversion was willful and malicious.[19] As such, the debt is non-dischargeable.

I, therefore, GRANT IN PART AND DENY IN PART the Thompsons' motion to alter or amend this Court's judgment of September 22, 2004.

IT IS SO ORDERED.

---

**19.** *McClendon v. DeVoll (In re DeVoll)*, 266 B.R. 81, 95 (Bankr.N.D.Tex.2001) (malice can be implied if the conversion was willful, or if the conversion was done knowingly, intentionally, deliberately, or designedly).