J-A13036-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BETTY J. RELLICK AND KIMBERLY K. VASIL | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHARLEEN RELLICK-SMITH AND ANNABELL MARCOALDI | : | |
| | : | |
| APPEAL OF: KIMBERLY K. VASIL | : | No. 884 WDA 2015 |

Appeal from the Order May 21, 2015
in the Court of Common Pleas of Indiana County,
Civil Division at No. 11283 CD 2014

BEFORE: OLSON, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 22, 2016**

Kimberly K. Vasil ("Vasil") appeals from the Order granting the Preliminary Objections filed by Annabell Marcoaldi ("Marcoaldi") and Sharleen Rellick-Smith ("Rellick-Smith"). We affirm.

Vasil and Betty J. Rellick ("Betty") commenced this action by filing a Complaint against Marcoaldi and Rellick-Smith (sometimes collectively referred to as "the Defendants") on August 4, 2014.[1] Vasil and Rellick-Smith are nieces of Rose M. Rellick (hereinafter "the decedent"),[2] who died on December 20, 2012.[3] Marcoaldi served as the decedent's accountant.

---

[1] Betty is not a party to this appeal.

[2] Betty is the decedent's sister.

[3] The record does not reveal whether the decedent died with a will, or the identity of the personal representative of her estate.

In the Complaint (and a subsequent Amended Complaint filed in January 2015), Vasil alleged three causes of action against the Defendants: (count 1) undue influence; (count 2) fraud; and (count 3) tortious interference with a contract. *See* Complaint, 8/4/14, at ¶¶ 6-15; Amended Complaint, 1/27/15, at ¶¶ 6-18.[4] According to Vasil, at some unidentified time prior to 2006, the decedent created a savings account (hereinafter, "the trust account") at First Commonwealth Bank (hereinafter, "First Commonwealth"). Amended Complaint, 1/27/15, at ¶ 8. Vasil asserted that the trust account was titled "in trust for" her.[5, 6] *Id.*

---

[4] Betty, Vasil's co-plaintiff, separately alleged that Rellick-Smith and Rellick-Smith's husband committed identity theft and made unauthorized charges on Betty's credit card. *See* Complaint, 8/4/14, at ¶¶ 16-25; Amended Complaint, 1/27/15, at ¶¶ 19-22. However, Betty's claims, and the trial court's disposition thereof, are not relevant to the instant appeal. Therefore, we will not address them or Betty's filings in the trial court.

[5] Vasil did not attach, to the Complaint or Amended Complaint, any documentation showing that she was, in fact, a beneficiary named on the trust account. However, we will accept this allegation as true, given our standard of review, *see infra*. Additionally, we observe that Marcoaldi attached to her appellate brief a purported copy of the First Commonwealth trust account statement, stating that the trust account was titled in the decedent's name, in trust for George N. Rellick, Jr., *i.e.*, the decedent's husband (who had predeceased her), and Vasil. Brief for Marcoaldi at 5, Exhibit 1.

[6] Notably, one who deposits money in a savings account in her own name in trust for another establishes a "Totten trust." *In re Estate of McFetridge*, 372 A.2d 823, 825 (Pa. 1977). The name is derived from *In re Totten*, 179 N.Y. 112, 71 N.E. 748 (N.Y. 1904), a New York Court of Appeals decision widely credited with first conceiving the notion of a "tentative" trust. "A Totten trust allows the depositor to retain complete control of the fund during [her] life and yet secure to the beneficiary any balance standing in the account at the death of the depositor." *Estate of McFetridge*, 372

As of September 8, 2006, the trust account contained $72,356. *Id.* On that date, Vasil contends, the Defendants "used [the] incapacitate[d] [decedent] to close" the trust account,[7] and then transferred the funds into a new joint account in the names of the decedent, Marcoaldi, and Rellick-Smith. *Id.* Vasil asserts that the Defendants used undue influence and "pressure[d]" the decedent to act "contrary to [her] free will[.]" *Id.* at ¶¶ 6, 8. According to Vasil, at the time, the decedent was "suffering from a medical condition which rendered her subject to the undue influence of [the Defendants]." *Id.* at ¶ 7. Specifically, Vasil maintained that the decedent had been suffering from Alzheimer's disease since at least 2004. *Id.* at ¶ 13; *see also id.* (wherein Vasil claims that Marcoaldi falsely told the decedent that she did not have Alzheimer's). Vasil additionally averred that "[t]he Defendants specifically failed to inform or remind the decedent that the funds in the [trust] account at issue had been set aside for [] Vasil as her 'share' of funds from the sale of a residence of an uncle, [Rellick-]Smith having already received her share directly." *Id.* at ¶ 11; *see also id.* at ¶ 12 (wherein Vasil urged that the funds in the trust account "belong[ed]" to her). Vasil further claimed that the beneficiary designation on the trust

A.2d at 825 (citation, quotation marks, and ellipses omitted). "Totten Trusts [] are essentially a 'poor man's will,' a judicial creation that[,] strictly speaking[,] is neither a will nor a trust but are fairly obviously testamentary transfers." *In re Estate of Rood*, 121 A.3d 1104, 1108-09 (Pa. Super. 2015) (citation, brackets and some internal quotation marks omitted).

[7] Vasil does not contest that the decedent personally closed the trust account.

account created a contractual relationship between the decedent and Vasil. *Id.* at ¶ 17. Therefore, Vasil argued, the Defendants, by pressuring the decedent to close the trust account, tortiously interfered with this contractual relationship, to Vasil's detriment. *Id.* at ¶ 18.

In August 2014, Rellick-Smith filed Preliminary Objections to the Complaint. Shortly thereafter, Marcoaldi filed separate Preliminary Objections, in the nature of a demurrer. On October 31, 2014, the trial court entered an Opinion and Order sustaining the Preliminary Objections, and dismissing Vasil's claims. The court ruled, in sum, that (1) Vasil lacked standing to sue because the trust account was merely a tentative trust, revocable at will by the decedent, and Pennsylvania does not recognize a claim for recovery based on an *inter vivos* transfer that diminishes a potential bequest; and (2) there was no contract between Vasil and the decedent, and, as a result, no tortious interference with a contract by the Defendants. After the trial court granted Vasil leave to file the Amended Complaint in January 2015, the Defendants again filed Preliminary Objections. By an Opinion and Order entered on May 18, 2015, the trial court sustained the Defendants' Preliminary Objections and dismissed Vasil's claims against the Defendants. On May 21, 2015, the trial court entered

judgment against Vasil and in favor of Rellick-Smith and Marcoaldi. Vasil

then timely filed a Notice of Appeal.[8, 9]

On appeal, Vasil presents a single issue for our review:

Did the [t]rial [c]ourt commit an error of law and abuse its discretion when it [] determined that[,] in Pennsylvania[,] there is no remedy, or cause of action, for a third party beneficiary who is cheated out of their share of [the trust] account due to the undue influence of designing individuals, or lack of capacity of the individual who created the bank account?

Brief for Appellant at 4.

Appeals from orders sustaining a preliminary objection in the nature of

a demurrer are reviewed under the following standard:

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be

---

[8] We observe that Vasil's Notice of Appeal purported to appeal from the "Order" entered on May 21, 2015. In actuality, the appeal properly lies from the trial court's May 18, 2015 Order sustaining the Defendants' Preliminary Objections. In any event, however, the appeal was timely filed.

[9] Also before this panel is a separate appeal (listed at No. 1105 WDA 2015), involving essentially the same parties, from a decision of the Indiana County Court of Common Pleas in a case in the Orphans' Court division (hereinafter "the Orphans' Court case"). Rellick-Smith initiated the Orphans' Court case against Vasil and Betty three months after Vasil's filing of the Complaint in the instant case. In the Orphans' Court case, Vasil and Betty, prior to the decedent's death, used their authority, as the decedent's agents under a power of attorney, to remove Rellick-Smith as one of the beneficiaries of two First Commonwealth certificate of deposit Totten trust accounts, leaving only Vasil and Betty as beneficiaries of these accounts. The Orphans' Court ruled that Rellick-Smith lacked standing to sue Vasil and Betty for their actions in this regard, and the only individuals who could sue an agent for abusing her authority under a power of attorney were the decedent or the decedent's personal representative, after her death.

considered to dispose of the legal issues presented by the demurrer. All material facts set forth in the pleading and all inferences reasonably deducible therefrom must be admitted as true.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred. The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion. When sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt. Thus, the question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Hill v. Slippery Rock Univ.*, 2016 PA Super 96, *7-8 (Pa. Super. 2016) (citation omitted).

Vasil argues that the trial court erred in ruling that she lacked standing to sue as a third party beneficiary of the trust account, and that she had not pled a viable cause of action against the Defendants. **See** Brief for Appellant at 9-14. Vasil contends that the decedent lacked capacity at the time she closed the trust account. **Id.** at 11. Therefore, Vasil argues, "the change was invalid, and upon the decedent's death, the tentative trust became irrevocable. This gives [Vasil] standing to enforce the contract in which she was the named intended beneficiary." **Id.**; **see also id.** (wherein Vasil asserts that she "would agree that[,] prior to [the decedent's] death[, Vasil]

lacked standing to enforce the contract as a third party beneficiary, but with the death[,] the tentative trust becomes irrevocable, and at that point[, Vasil] had … standing to enforce the contract.").

In her brief, Marcoaldi responds that she and Rellick-Smith never personally benefitted by the decedent's closing of the trust account. Brief for Marcoaldi at 1. Rather, Marcoaldi asserts, the decedent closed the trust account because she desired that the money formerly therein go to five of the decedent's "grand-nieces" (some of whom appear to be children of Vasil). *Id.* According to Marcoaldi, this money was only *temporarily* transferred into a bank account titled in the decedent's, Marcoaldi's, and Rellick-Smith's names, until it could be given to the decedent's grand-nieces. *Id.*

In its Opinion and Order, the trial court addressed Vasil's claim as follows:

> Despite … Vasil's contention that the [trust account] "is clearly a contract," th[e trial c]ourt disagrees. In the [trial court's] previous [O]pinion[, *i.e.*, in support of the court's October 31, 2014 Order granting the Defendants' first set of Preliminary Objections], th[e c]ourt followed case law that held that an "in trust for account[," *i.e.*, a Totten trust,] created during one's lifetime, with one's money and in his or her name is a tentative trust and revocable at will by the settlor. **In re Scanlon's Estate**, [169 A. 106, 108] ([Pa.] 1933). "In trust for accounts[,]" by their nature[,] are provisional and the beneficiary's interest is a mere expectancy and not vested. **In re Iafolla's Estate**, 110 A.2d 380[, 396] (Pa. 1955). [Additionally, the trial court observed in its prior Opinion as follows: "The existence of a contractual relationship is an element and a pre-requisite for a claim of tortious interference with a contract. **Empire Trucking Co. v. Reading Anthracite**

***Coal Co.***, 71 A.3d 923[, 933] (Pa. Super. 2013)[;] RESTATEMENT (SECOND) OF TORTS, [§] 766. Here, there was no contract." Trial Court Opinion and Order, 10/31/14, at 5.]

As to … Vasil's argument about standing, the [trial c]ourt's prior [O]pinion cited case law which clearly states that: "our law does not provide grounds for recovery on the basis of *inter vivos* transfers alleged to diminish an eventual bequest." ***Estate of Hollywood v. First Nat[.] Bank of Palmerton***, 859 A.2d 472, 477 (Pa. Super[.] 2004). This was reiterated by the Third Circuit Court, in ***Steele v. First Nat. Bank of Mifflintown***, 963 F. Supp. 2d 417 (M.D. Pa. 2013).[10] In ***Steele***, the plaintiff set forth a tort claim [against a bank] for willfully, recklessly and/or negligently failing to fund an LLC, which interfered with the plaintiff's inheritance. ***Id.*** at 425. In response, the bank argued that Pennsylvania law recognizes a claim of intentional interference with an inheritance in only limited circumstances, and only extended it to interference with a last will and testament. ***Id.*** In response, "plaintiff acknowledges that this tort has not been extended beyond the context of interference with a will[,] but urges the Court to find that the instant case is analogous to such circumstances and warrants an extension of the law." ***Steele*** at 425. The ***Hollywood*** case was cited:

> In ***Hollywood*** …, the Pennsylvania Superior Court adopted Restatement (Second) of Torts § 774B, pertaining to interference with inheritance claims, but has so far limited such claims to "instances involving demonstrable interference with the testamentary scheme enshrined in a decedent's will." [***Hollywood***, 859 A.2d] at 477. In ***Hollywood***, the [C]ourt held that to state a claim for wrongful interference with a will, a plaintiff must plead that: "(1) The testator indicated an intent to change his will to provide a described benefit for plaintiff[;] (2) The defendant used fraud, misrepresentation or undue influence to prevent execution of the intended will[;] (3) The defendant was successful in preventing the execution of a new will;

___

[10] We acknowledge that the federal court's decision in ***Steele*** is persuasive authority only. ***See Stone Crushed P'ship v. Kassab Archbold Jackson & O'Brien***, 908 A.2d 875, 884 n.10 (Pa. 2006). Nevertheless, ***Steele*** is relevant as it adeptly summarized this Court's holding in ***Hollywood***, and addressed similar circumstances as those presented in the instant case.

- 8 -

and (4) But for the defendant's conduct, the testator would have changed his will." ***Id.*** at 477-78. The Plaintiff contends that the Court should extend ***Hollywood*** to the matter *sub judice* and asserts that each of these elements is plainly satisfied by the Complaint.

***Steele***[, 963 F. Supp. 2d] at 426.

The Court in ***Steele***[] expressly declined to extend the scope of ***Hollywood*** to include interference with revocable trust schemes. ***Id.*** While … Vasil may be perplexed as to who has standing, case law is clear that our law does not provide grounds for recovery in the[se] circumstances.

\* \* \*

… [F]or the reasons set forth above, there was no contract. Here, the decedent established [the trust account], in her name, with her own money, in trust for others. In doing so, she did not engage in a contractual relationship with the [beneficiaries she named], as the [trust account] was a tentative trust, revocable at will. … Vasil argue[s] that [she was] named on the [trust account] contract between the decedent and [First Commonwealth]. However, the [trial c]ourt finds that the contractual relationship with [First Commonwealth] and the decedent was for the bank to pay the individuals designated by the depositor. Here, before the decedent died, she changed the beneficiaries of the [trust account], excluding … Vasil. There is no breach between [First Commonwealth] and the decedent[,] and … "our law does not provide grounds for recovery on the basis of *inter vivos* transfers alleged to diminish an eventual bequest." [] ***Hollywood*** …, 859 A.2d [at] 477[.]

Trial Court Opinion and Order, 5/18/15, at 7-9 (footnote added).

Our review of the record and the law discloses that the trial court's above analysis and determination is sound. We therefore affirm on this basis with regard to Vasil's sole issue, ***see id.***, with the following addendum.

Though there is authority to support standing in a named beneficiary of a Totten trust account, following the death of the depositor, standing exists only where, unlike here, the depositor did not revoke the trust prior to her death. **See** RESTATEMENT OF TRUSTS (SECOND), § 58 (providing that "[w]here a person makes a deposit in a savings account in a bank or other savings organization in his own name as trustee for another person[,] intending to reserve a power to withdraw the whole or any part of the deposit at any time during his lifetime and to use as his own whatever he may withdraw, or otherwise to revoke the trust, *the intended trust is enforceable by the beneficiary upon the death of the depositor as to any part remaining on deposit on his death* **if he has not revoked the trust**.") (emphasis added); **see also Estate of McFetridge**, 372 A.2d at 825 (relying upon section 58 and explaining Totten trusts).

Additionally, we are unpersuaded by Vasil's claim that, under **Melley v. Pioneer Bank, N.A.**, 834 A.2d 1191 (Pa. Super. 2003), she has standing to sue as a third party beneficiary. **See** Brief for Appellant at 10. The unique circumstances presented in **Melley** are clearly distinguishable from the instant case,[11] as, here, the decedent was free to choose to revoke the trust account or change the beneficiaries at any time.

---

[11] In **Melley**, funds were deposited into a bank account for the benefit of two children, pursuant to a court order referenced in the deposit checks, following a wrongful death settlement concerning their father. **Melley**, 834 A.2d at 1195. The children's mother later misappropriated this money for her own benefit. **Id.** The bank maintaining the account did not prevent her

- 10 -

Based upon the foregoing, we conclude that the trial court did not commit an error of law in ruling that Vasil lacked standing to sue and that she failed to allege a viable cause of action against the Defendants. Therefore, the trial court properly exercised its discretion in granting the Defendants' Preliminary Objections to the Amended Complaint.

Order affirmed.

Judge Olson and Judge Stabile join this memorandum.

Judge Olson files a concurring statement which Judge Stabile and Judge Musmanno join.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/22/2016

---

from doing so, despite the court order and account designation. *Id.* This Court held that the children had standing to sue the bank, as third party beneficiaries to the deposit contract, "[c]onsidering the compelling circumstances surrounding the transactions at issue." *Id.* at 1202. We concluded that, "in accepting the checks for deposit, [the bank] had a contractual duty to inquire as to the court Orders and abide by their mandates[,]" and it "breached this duty by failing to do so." *Id.* at 1203.